FILED

OCT 15 2010

UNITED STATES BANKRUPTCY **COURT**
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTER DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 10-19733-B-12 |
| James Alan Pandol, | ) | DC No. WW-1 |
| Debtor. | ) | |
| _____ | ) | |
| Pandol Brothers, Inc., Ranch 50, LLC, Winifred Pandol, individually and as Trustee of the Jack and Winifred Pandol Family Trust, | ) ) ) ) ) | |
| Movants, | ) | |
| v. | ) ) | |
| James Alan Pandol and Phillip W. Gillet, Jr., Esq., | ) ) ) | |
| Respondents. | ) | |
| _____ | ) | |

**MEMORANDUM DECISION REGARDING
MOTION FOR SANCTIONS**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Riley C. Walter, Esq., of Walter & Wilhelm Law Group, appeared on behalf of Pandol Brothers, Inc., Ranch 50, LLC, Winifred Pandol, individually and as Trustee of the Jack and Winifred Pandol Family Trust.

Phillip W. Gillet, Jr., Esq., appeared on behalf of the debtor, James Alan Pandol.

Before the court is a motion for sanctions under Fed.R.Bankr.P. 9011(c) (the "Motion"). The moving parties contend that this bankruptcy petition was frivolous,

filed in bad faith, and filed for an improper purpose. The moving parties seek an award of monetary and nonmonetary sanctions against both the debtor, James Alan Pandol (the "Debtor") and his attorney, Phillip W. Gillet, Jr., Esq. ("Gillet" - collectively "Respondents"). For the reasons set forth below, the Motion will be granted in part.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. § 105,[1] Federal Rule of Bankruptcy Procedure 9011, and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**Background**

This is the third chapter 12 petition filed in close succession by this Debtor and involving the same attorney, Gillet. The moving parties here, Pandol Brothers, Inc., Ranch 50, LLC, Winifred Pandol, individually and as Trustee of the Jack and Winifred Pandol Family Trust (hereafter "Creditors") have filed successful motions to dismiss all three petitions. The first petition (case number 09-62162-B-12) was filed by the Debtor *in propria persona* on December 14, 2009. At that time, a secured creditor, Sterling Pacific Lending, Inc. ("Sterling Pacific") was foreclosing on all of the Debtor's real property and Creditor Pandol Brothers., Inc., was prosecuting trademark infringement litigation against the Debtor. Gillet substituted into the first case as the attorney of record on January 15, 2010. The first case was

---

[1] Unless otherwise indicated, all bankruptcy, chapter, code section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

contentious and fraught with administrative problems as detailed more fully in the record of the first case and the Creditors' pleadings.  Confirmation of the Debtor's chapter 12 plan was denied and the first case was finally dismissed by this court on June 15, 2010, after a series of hearings.  Based on evidence presented by the Creditors, the court determined that the Debtor was not a "family farmer" within the meaning of § 101(18)(A).[2]

At the hearing on June 2, 2010, the court gave the Debtor an opportunity to convert the first case to chapters 7 or 11.  Gillet represented to the court that the Debtor was out of the country and requested 12 days for the Debtor to make that decision.  The Debtor did not use that time to prepare for conversion.  Instead, he and Gillet used the time to prepare another chapter 12 bankruptcy petition.  The Debtor did not appeal the first dismissal order and the Creditors did not request sanctions in connection with the first case.

One day after entry of the order dismissing the first case, the Debtor filed his second chapter 12 petition (case number 10-16738-A-12).  The Creditors' second motion to dismiss came before Judge Whitney Rimel on July 30, 2010.  The Debtor was unable to show a change of circumstances and Judge Rimel dismissed the second case, giving effect to this court's prior determination that the Debtor was not eligible for relief under chapter 12.  The Debtor did not appeal the second dismissal order and the Creditors did not request sanctions in connection with the second case.

---

[2]The Debtor's bankruptcy schedules did not list any interest in crops or crop proceeds.  Neither did they report any liability for crop financing.  The Debtor did not move for use of cash collateral or seek any other relief normally associated with a farming operation.  All of the Debtor's farming activity was being conducted by Quinto Farms, LLC, a corporation which the Debtor owns, but from which he reported drawing little, if any, compensation.  At the hearing on the first dismissal motion, Gillet acknowledged, in response to a question from the court, that the Debtor was not eligible for chapter 12 relief unless the court viewed the Debtor and Quinto Farms as one consolidated estate.  Quinto Farms was not then in bankruptcy and none of its assets, liabilities, or business activities were subject to the court's jurisdiction and review.

3

1    After dismissal of the second case, Sterling Pacific conducted its foreclosure sale of

2    the Debtor's real property.

3        Gillet filed this third chapter 12 petition on behalf of the Debtor three weeks

4    later, on August 24, 2010. At the time, Sterling Pacific was attempting to locate and

5    serve the Debtor with a notice to commence eviction proceedings. In his schedules,

6    the Debtor declared that he still owned the real property that Sterling Pacific had

7    already foreclosed on. His statement of financial affairs did not disclose Sterling

8    Pacific's foreclosure even though he knew by then that it had taken place.[3]  On

9    September 8, 2010, the Debtor, with the assistance of Gillet, filed a chapter 12

10   petition for the Debtor's farming corporation, Quinto Farms, LLC ("Quinto" - case

11   number 10-60375-A-12). *See* footnote 2, *supra*.

12       At a noticed hearing on September 9, 2010, the court made a ruling on

13   Sterling Pacific's motion, brought pursuant to § 362(c)(4)(A)(ii), confirming that no

14   automatic stay was in effect. That order was entered on September 10, 2010.[4]  The

15   court also denied the Debtor's emergency motion to impose the automatic stay

16   under § 362(c)(4)(B) on the grounds that the Debtor had failed to establish his

17   "good faith." That motion was not even filed until September 8, 2010, one day

18   before the dismissal hearing. The parties waived the right to an evidentiary hearing

19   on the dismissal and sanction issues. The court set a briefing schedule and took

20   both matters under submission.

21       This third case was dismissed by an order entered on September 29, 2010,

22   and the Debtor was barred from refiling another bankruptcy petition, without prior

23

24       [3]In his opposition brief, the Debtor acknowledges that he knew about the foreclosure
     but wanted to get the bankruptcy filed before Sterling Pacific could record its trustee's deed.
25   (Debtor's Opposition to Motion to Dismiss and Request for Sanctions, 3:25-28, September
     27, 2010.)
26

27       [4]Sterling Pacific recorded the trustee's deed on or about September 15, 2010.
     (Debtor's Declaration Re: Opposition to Motion to Dismiss and Sanctions, 3:26-27,
28   September 27, 2010.)

4

1   leave of the court for a period of 180 days.  In that ruling, the court found that (1)

2   the Debtor was still ineligible for chapter 12 relief, and (2) the third chapter 12

3   petition was not filed in good faith.  The court reserved jurisdiction over the

4   sanction issue.

5   **Issues Presented**

6         The Creditors contend that all three chapter 12 petitions were frivolous and

7   filed in bad faith for an improper purpose.  They now request that sanctions be

8   awarded based on the express authority under Rule 9011.  They also request that

9   sanctions be imposed pursuant to the bankruptcy court's inherent authority to

10   sanction inappropriate conduct under § 105.  They ask for injunctive relief barring

11   the Debtor from refiling another chapter 12 petition, but that issue has already been

12   resolved in the dismissal order.  The Creditors ask for an order compelling Gillet to

13   disgorge to the court all moneys he received from the Debtor in connection with all

14   three chapter 12 cases.  They also request an award from the disgorged funds in the

15   amount of $45,616 representing all of the attorney's fees billed by the Creditors'

16   bankruptcy counsel in connection with the three bankruptcy cases and the Creditors'

17   ongoing dispute with the Debtor.  Finally, they request that sanctions be awarded

18   against the Debtor and Gillet in the amount of $2,500 each and a declaration that

19   said awards are not dischargeable in a future bankruptcy proceeding.

20         The Creditors did not request sanctions or raise the sanction issue in either

21   the first or the second case.  A review of the billing records indicates that the

22   Creditors have actually incurred about $4,985 in legal fees and costs to bring the

23   dismissal and sanction motion in response to the Debtor's filing of this third case.

24   Other than those legal fees, the evidence does not establish that the Creditors have

25   incurred any other damages as a direct result of the filing of this petition.

26         In response to the Motion, Respondents contend that they acted out of a good

27   faith belief that chapter 12 eligibility for the Debtor could be created through

28   consolidation of this case with the Quinto case.  The Respondents also argue that the

1    Creditors' request for reimbursement of all attorney's fees dating back to
2    commencement of the first case is untimely and excessive. Finally, they contend
3    that the sanction motion is procedurally defective because it was stated in the same
4    pleading with the Creditors' dismissal motion.

5    **Analysis and Conclusions of Law**

6    Rule 9011 imposes an obligation upon an attorney to ensure that all
7    bankruptcy court submissions are "truthful and for proper litigation purposes."
8    *Smyth v. City of Oakland (In re Brooks-Hamilton)*, 329 B.R. 270, 277 (9th Cir. BAP
9    2005). The Rule imposes an affirmative duty on the attorney to conduct a
10   reasonable investigation into the law and facts before submitting a pleading, motion,
11   or other paper to the court. *Bus. Guides, Inc. v. Chromatic Comm. Enters., Inc.*, 498
12   U.S. 533, 551 (1991). Here, the disputed conduct is the Debtor's filing of a third
13   consecutive chapter 12 petition after two bankruptcy courts had ruled that the
14   Debtor was not eligible for chapter 12 relief. The standard against which the court
15   must evaluate the offending conduct is one of objective reasonableness under the
16   circumstances. *Id.* In other words, would a competent attorney admitted to practice
17   before the bankruptcy court have signed and submitted the subject chapter 12
18   petition to the court? *See Brooks-Hamilton*, 329 B.R. at 277. If the answer is no,
19   then Rule 9011 sanctions may be warranted.[5] When the offending conduct is the

20

21   [5] Rule 9011 provides, in pertinent part:

22
23   (b) **Representations to the Court.** By presenting to the court . . . a petition,
     pleading, written motion, or other paper, an attorney or unrepresented party is
24   certifying that to the best of the person's knowledge, information, and belief, formed
     after an inquiry reasonable under the circumstances, -
25
26   (1) it is not being presented for any improper purpose, such as to
     harass or to cause the unnecessary delay or needless increase in the
27   cost of litigation;
28   (2) the claims, defenses, and other legal contentions therein are

6

1    alleged filing of a bankruptcy petition in violation of Rule 9011(b), the "safe

2    harbor" protection of Rule 9011(c)(1)(A) (notice and an opportunity to withdraw the

3    pleading) does not apply.  Rule 9011(c)(1)(A)).

4        Rule 9011 is the bankruptcy equivalent to Fed.R.Civ.P. 11.  The two

5    requirements of both rules are the same.  First, the attorney who signs a document

6    filed with the court must certify that the document is not frivolous, *i.e.*, that the

7    document is well-grounded in fact and is warranted by existing law or a good faith

8    argument for the extension, modification, or reversal of existing law.  Rule 9011(b).

9    Second, the signing attorney must ensure that the document he presented to the

10   court is not interposed for any improper purpose, such as to harass or to cause

11   unnecessary delay or needless increase in the cost of litigation.  *Id.*  Because

12   Fed.R.Civ.P. 11 and Rule 9011 use virtually identical language, the courts often

13   look to cases interpreting one rule for application of the other.  However, the policy

14   considerations behind the two rules are different.  While federal courts recognize the

15   important need to encourage access to the civil courts, they also recognize "that

16   bankruptcy proceedings are subject to a degree of manipulation and abuse not

17   typical of civil litigation."  *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829-30

18   (9th Cir. 1994).

19       Because of the "realities of bankruptcy practice," the bankruptcy courts must

20   _____

21       warranted by existing law or by a nonfrivolous argument for the extension,
22       modification, or reversal of existing law or the establishment of new law;

23           (3)  the allegations and other factual contentions have evidentiary support or,
         if specifically so identified, are likely to have evidentiary support after a reasonable
24       opportunity for further investigation or discovery[.]

25       (c) **Sanctions**.  If, after notice and a reasonable opportunity to respond, the court
26       determines that subdivision (b) has been violated, the court may, subject to the
         conditions stated below, impose an appropriate sanction upon the attorneys, law
27       firms, or parties that have violated subdivision (b) or are responsible for the
28       violation.

7

1 consider both the "frivolous" factor and the "improper purpose" factor on a sliding
2 scale. When the showing of one element is more compelling, then the showing
3 required for the other element is less so. *Id.* at 830. The determination of
4 reasonableness under Rule 9011 is "an intensely fact-bound inquiry." *Townsend v.*
5 *Holman Consulting Corp.*, 929 F.2d 1358, 1364-65 (9th Cir. 1990).

6        When sanctions are warranted for violation of Rule 9011(b), the court may
7 award to the prevailing party, "the reasonable expenses and attorney's fees incurred
8 in presenting or opposing the motion." Rule 9011(c)(1)(A). The sanctions imposed
9 for violation of Rule 9011 "shall be limited to what is sufficient to deter repetition
10 of such conduct or comparable conduct by others similarly situated. . . . [T]he
11 sanction may consist of . . . an order directing payment to the movant of some or all
12 of the reasonable attorneys' fees and other expenses incurred as a direct result of the
13 [Rule 9011(b)] violation." Rule 9011(c)(2).

14        The Creditors contend that the Debtor is a "serial filer" and that he has filed
15 three frivolous petitions for an improper purpose, specifically (1) to inhibit the
16 prosecution of pending trademark litigation against the Debtor and (2) to prevent
17 Sterling Pacific from enforcing its foreclosure remedies against his real property. In
18 response, the Respondents go to great lengths to explain and defend the various
19 problems that preceded the demise of the first case and try to disparage the
20 Creditors' motives for seeking dismissal of the cases in the first place. The Debtor
21 contends that he intended to file a chapter 12 petition for his farming corporation,
22 Quinto, and then move to consolidate or jointly administer this case with the Quinto
23 case. But the Debtor did not file a petition for Quinto until one day before the
24 hearing on this Motion. The Quinto case was not designated as a "related case" and
25 was not assigned to this court; no motion to consolidate was filed and there has been
26 no determination of Quinto's "family farmer" status. It is not clear from the record
27 what research was done to support the "consolidation" theory, but Gillet alleges that
28 he researched and discussed the theory with other bankruptcy attorneys. However,

8

the Respondents cite no authority for the proposition that an individual nonfamily-farmer can make himself eligible for chapter 12 relief by consolidating or jointly administering his case with a business family-farmer case.

By the time this bankruptcy was filed, Sterling Pacific had foreclosed on the Debtor's farming property. The Debtor admits that he hurried to file this case before Sterling Pacific could record its trustee's deed after foreclosure, presumably in an effort to stay completion of the foreclosure. However, he did nothing to request the imposition of an automatic stay under § 362(c)(4) until one day before the hearing on this Motion. Gillet argued at the hearing that the commencement of this third bankruptcy should invoke the automatic stay on account of the chapter 12 trustee, but that argument is not supported by a plain reading of § 362(c)(4) and Gillet was unable to cite any authority for that position.

In summary, none of the arguments raised by the Respondents for the filing of this chapter 12 petition appear to be well grounded in existing law or worthy of consideration for an extension, modification or reversal of existing law or the establishment of a new law. Rule 9011(b)(2). If the Debtor truly wanted to reorganize and save his property, he could have converted his first case to chapter 11, as the court invited. The Debtor's explanation for not doing so was woefully unpersuasive as justification for ignoring the court's prior "eligibility" ruling.[6] It appears that the Debtor was much more motivated by a desire to hinder and delay the Pandol Brothers' trademark litigation and Sterling Pacific's efforts to complete its foreclosure and obtain possession of the real property. Looking at the "totality of the circumstances," this court is persuaded that there was no meritorious basis for the Respondents to file this chapter 12 petition, especially after this court ruled that

---

[6]In response to the dismissal motion, the Debtor explained why he decided not to convert the first case to chapter 11. In summary, the Debtor did not want to shoulder the responsibility and the accountability, and the added expenses associated with being a debtor-in-possession in chapter 11.

9

1    the Debtor was not a "family farmer" and gave them an extended period of time to

2    convert the first case and remain under the protection of the Bankruptcy Code.

3        Finally, the Respondents argue that the Motion for sanctions is procedurally

4    defective because it was not filed as a separate pleading from the motion to dismiss.

5    They cite to Rule 9011(c) which requires that a motion for sanctions be made

6    separately from any other motion or request and specifically describe the conduct

7    alleged to violate Rule 9011(b). The Respondents also cite to the case of

8    *Krommenhoek v. Covino (In re Covino)*, 241 B.R. 673, 680 (Bankr.D.Idaho 1999)

9    for the proposition that the sanction Motion should be denied. In *Covino*, the

10   sanction request was combined with a motion to strike a post-trial motion in an

11   adversary proceeding. However, the moving party also failed to comply with the

12   21-day safe harbor restriction in Rule 9011(c)(1)(A), which is not applicable to this

13   case. The court exercised its discretion to deny the sanction motion based on the

14   combination of defects. The "safe harbor" restriction in Rule 9011 is grounded in a

15   strong policy of fairness and a desire to avoid unnecessary litigation. The sanction

16   motion in *Covino* could have been denied on that basis alone. The policy

17   considerations behind the "separate pleading" limitations in Rule 9011 are less

18   obvious and compelling. The *Covino* court did not declare that the pleading defect

19   alone compels denial when the record clearly shows that sanctions are warranted.

20       It is true that the Creditors' motion for sanctions was stated in the same

21   pleading as the dismissal motion, but both motions were based on essentially the

22   same facts. The motions overlapped in that both sought injunctive relief against a

23   future filing. The two motions were separately docketed in the court's docketing

24   system. The court gave the Respondents an opportunity to respond to each motion

25   and the court has issued separate rulings on each motion. Even if this court were to

26   deny the request for sanctions under Rule 9011, it could reach the same result, and

27   for the same reasons, under § 105. The Creditors request alternative relief under

28   § 105 and the Respondents have shown no prejudice based on the way in which the

10

1 | sanction Motion was initially presented.

2 | **Conclusion**

3 |     Based on the foregoing, the court finds and concludes that this chapter 12

4 | petition was both frivolous and filed for an improper purpose. The court is

5 | persuaded that a competent attorney who frequently practices before the bankruptcy

6 | court would not have signed and filed the Debtor's third chapter 12 bankruptcy

7 | petition under the circumstances. Therefore, sanctions are warranted under Rule

8 | 9011(c).

9 |     As to the question of what sanctions to award, the court has already

10 | addressed the injunctive relief issued in the dismissal order. The Creditors did not

11 | request sanctions in either the first or the second bankruptcy case. Had they done

12 | so, the court could have timely reviewed that issue in the context of the facts and

13 | circumstances before it. Further, an earlier request for sanctions might have

14 | successfully deterred the filing of this third case. Rule 9011 authorizes sanctions in

15 | an amount sufficient to compensate the moving parties for expenses incurred as a

16 | result of the violation of Rule 9011(b). The only violation of Rule 9011(b) that is

17 | presently before this court is the Respondents' filing of this third bankruptcy

18 | petition. The evidence shows that the Creditors incurred approximately $5,000 in

19 | attorney's fees and costs in having to respond to the filing of this case. The court is

20 | persuaded that a $5,000 award of sanctions against both of the Respondents,

21 | coupled with the 180-day bar against refiling in the dismissal order, will deter

22 | similar violations of Rule 9011(b) in the future. Accordingly, sanctions will be

23 | awarded in the amount of $5,000 representing the fees and costs incurred by the

24 | Creditors as a direct result of the Respondents' violation of Rule 9011(b).

25 |     Dated: October ___/5___, 2010

26 |

27 | W. Richard Lee
    | United States Bankruptcy Judge

28 |

11